***********
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before the Deputy Commissioner, the briefs and oral argument before the Full Commission and the subsequently submitted evidence. The appealing party has shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission reverses the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a pre-trial agreement at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Defendant N.C. Insurance Guaranty Association is the carrier on the risk.
3. An employee-employer relationship existed between the parties at all relevant times.
4. Plaintiff sustained an admittedly compensable injury to her lower back and left arm on January 25, 2000, which arose out of and in the course of her employment with defendant-employer.
5. Plaintiff's average weekly wage was $549.39, which yields a compensation rate of $366.28 per week.
6. Plaintiff's authorized treating physician has assigned a 3% permanent partial disability rating to her back and a 3% permanent partial disability rating to her left arm.
7. Defendants paid plaintiff temporary disability compensation from January 31, 2000, through August 11, 2003.
8. The issue for determination is:
 Whether the Industrial Commission should affirm the August 6, 2003, Order of Special Deputy Commissioner Kesler approving defendants' application to suspend plaintiff's disability compensation effective July 9, 2003, due to plaintiff's refusal to return to work?
9. The parties stipulated into evidence the following documents:
 a. Stipulated Exhibit #1: Pre-trial Agreement signed by defendants; and
 b. Stipulated Exhibit #2: Plaintiff's medical records, Industrial Commission Forms and discovery responses.
10. In addition to the Stipulated Exhibits, plaintiff offered a pack of medical records, correspondence and discovery responses as Plaintiff's Exhibit #1. Included in the records are plaintiff's and her husband's personal opinions regarding the significance of certain records. This Exhibit was allowed only insofar as related to the actual medical records and discovery responses. Some of the medical records are in Chinese and the interpretation of these records as submitted by a certified interpreter following the hearing before the Deputy Commission is incorporated into plaintiff's Exhibit #1.
 ***********
Based upon all the competent evidence in the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 57 years old. At the time of her injury on January 25, 2000, plaintiff was employed as a waitress for the Hilton Hotel at University Place in Charlotte, North Carolina. Plaintiff's duties included serving drinks and food.
2. On January 25, 2000, plaintiff suffered a compensable injury when she lost her balance and fell while lifting a glass rack onto a shelf. Defendants accepted the claim as compensable on a Form 60 filed on January 17, 2001.
3. Plaintiff initially presented to Dr. Joseph Zuhosky, who is a specialist in physical medicine rehabilitation, pain medicine and electrodiagnostic medicine. Dr. Zuhosky treated plaintiff for a subacute lumbar strain, left lateral epicondylitis and left elbow pain. On May 30, 2000, Dr. Zuhosky released plaintiff with a 0% permanent partial disability rating to her back. Dr. Zuhosky also assigned a permanent lifting restriction of 15 pounds to plaintiff.
4. On September 26, 2000, Dr. Zuhosky opined that plaintiff had reached maximum medical improvement and he released her to work within her previous restrictions. He further recommended that plaintiff proceed with a functional capacity evaluation ("FCE").
5. On October 12, 2000, an FCE was performed and on October 17, 2000, Dr. Zuhosky summarized the results indicating that plaintiff essentially had a 15-pound permanent lifting restriction. Dr. Zuhosky opined that he believed plaintiff had reached maximum medical improvement. He assigned a permanent partial impairment rating of three percent (3%) to plaintiff's elbow.
6. On February 1, 2001, plaintiff presented to Dr. David DuPuy, an orthopedic specialist, for an independent medical examination. Dr. DuPuy opined that plaintiff was essentially at maximum medical improvement. However, he also opined that "in view of the negative exam for her back except for [plaintiff's] description of pain and given the inconsistent FCE findings and the symptom magnification on today's exam, I question why Dr. Zuhosky put her on a 15-pound lifting restriction for the rest of her life." Dr. DuPuy further opined, "I think it could be a pretty simple task for her to be able to go back at light duty and ramp up over the next month or two and I expect she would be able to do her job without restrictions."
7. On December 11, 2001, plaintiff returned to Dr. Zuhosky with continuing complaints of low back pain. An MRI performed on January 18, 2002, revealed annular tears at L4-5 and L5-S1.
8. On April 2, 2002, Dr. Zuhosky recommended that plaintiff undergo an EMG and nerve conduction study because of her ongoing complaints. These studies were performed on April 18, 2002, and Dr. Zuhosky interpreted them as normal and as showing no electrodiagnostic evidence of lumbosacral radiculopathy, myopathy or generalized neuropathy.
9. Following conservative treatment, Dr. Zuhosky released plaintiff on May 2, 2002, to return only as needed if there were a substantial change in her condition. He continued the 15-pound lifting restriction and assigned plaintiff a three percent (3%) permanent partial disability rating to her back.
10. Vocational rehabilitation case manager, Lee Anzaldi, was assigned to plaintiff's case to provide job development and coordinate medical treatment. On May 28, 2003, Mr. Anzaldi informed plaintiff by letter that defendant-employer "has agreed to present you with a re-employment opportunity as a waitress/server. This is the same position that you worked prior to your workers' compensation injury." As of June 4, 2003, Mr. Anzaldi was aware that defendants had reduced plaintiff's work restriction from 15 to 10 pounds, even though the other responsibilities remained similar.
11. On or about June 6, 2003, Mr. Anzaldi presented a job description for the waitress position to Dr. Zuhosky. The job description did not offer a specific description of the actual duties of a waitress, but stated that the employee, "Provides guests in the Catering Department with the highest standard of food and beverage service on all functions. In so doing, it is expected that all efforts be directed toward guest satisfaction, the achievement/maintenance at division standards and profit maximization."
12. The job description also provided "General Responsibilities," instructing the employee to perform all activities in a cordial manner, to maintain a commitment to guest satisfaction and a cooperative, team-like attitude with supervisors and fellow employees and to keep a positive attitude. At the bottom of the description written in long hand is the notation "Restrict lifting to 10 lbs."
13. Although the Industrial Commission ordered the record to be reopened to allow, among other things, defendants to present an affidavit, which would more specifically describe plaintiff's job responsibilities, defendants failed to present any further documentation.
14. On June 6, 2003, plaintiff wrote a letter to Dr. Zuhosky in which she expressed her strong concerns and objections to defendants' offer of the waitress position. Plaintiff also explained to Dr. Zuhosky that the position, which defendants were offering was, according to her, the same position that she was performing at the time of her accident. Plaintiff also described what the job entailed.
15. In a June 10, 2003, letter, Dr. Zuhosky acknowledged receipt of plaintiff's letter but nonetheless approved the position. Dr. Zuhosky confirmed, "For some time now [plaintiff] has been released with permanent restrictions of a 15-pound lifting restriction related to previous functional capacity assessment."
16. Dr. Zuhosky further opined that the 15-pound lifting restriction is quite appropriate and that plaintiff is at maximum medical improvement. He stated that if defendant had a position that would require less than 15 pounds of lifting, he saw no medical reason why plaintiff could not perform it.
17. On June 11, 2003, Lee Anzaldi, plaintiff's vocational rehabilitation case manager, wrote to Dr. Zuhosky confirming that defendant-employer was willing to offer plaintiff a job within her assigned work restrictions and accordingly, did not complete a detailed job analysis. Mr. Anzaldi confirmed that the job would not require lifting over 10 pounds, which was within Dr. Zuhosky's restriction. Mr. Anzaldi also sent a copy of the job description to Dr. Zuhosky and a physician review form, which he requested that Dr. Zuhosky complete and return.
18. On June 18, 2003, Dr. Zuhosky completed the physician review form indicating that he had reviewed the job description and believed that plaintiff was capable of performing the physical demands of the waitress position. However, plaintiff never returned to work to attempt the job duties.
19. By letter dated June 23, 2003, defendants offered plaintiff the position and instructed plaintiff to return to work on June 30, 2003. Plaintiff refused the position, as she believed it to be the same position she had held prior to her injury and she did not believe she could perform the job. Plaintiff did not report for work on June 30, 2003, or on any subsequent date. She has never attempted to perform the job responsibilities that were approved by Dr. Zuhosky and within her restrictions.
20. On June 30, 2003, defendants filed a Form 24 Application to suspend compensation based upon plaintiff's refusal to accept suitable employment. By Order of the Executive Secretary on August 6, 2003, defendants were permitted to suspend compensation.
21. On June 14, 2005, plaintiff presented to Dr. Michael D. Getter, an orthopedic specialist, for an independent medical examination by Order of the Full Commission. Dr. Getter opined that the 15-pound lifting restriction was well within keeping of plaintiff's functional capacity. Dr. Getter also opined that plaintiff should not do any repetitive bending, stooping or squatting.
22. On July 19, 2005, defendants deposed Dr. Zuhosky. Although plaintiff's counsel was given timely notice of the deposition, he did not attend.
23. Having considered the results of plaintiff's FCE, job description, plaintiff's comments and her own description of the position as well as the medical evidence, Dr. Zuhosky testified, "we do not have any medical reason to state that [plaintiff] cannot perform the function, the basic tasks as outlined in the official job description. We would further comment that it is a clear disconnect, as noted on her past assessment, between [plaintiff's] estimation of her impairment and what we see objectively."
24. The Full Commission gives greater weight to the opinion of Dr. Zuhosky, who is plaintiff's treating physician.
25. The Full Commission finds that the job defendants offered to plaintiff was suitable employment and plaintiff's refusal of the position was unjustified. In reaching this finding, the Full Commission, as did Dr. Zuhosky, relies on the March 25, 2003, job description that defendants provided.
 ***********
Based upon the foregoing stipulations and findings of fact, the undersigned makes the following:
 CONCLUSIONS OF LAW
1. N.C. Gen. Stat. § 97-32 provides: "If an injured employee refuses employment procured for him suitable to his capacity he shall not be entitled to any compensation at any time during the continuance of such refusal, unless in the opinion of the Industrial Commission such refusal was justified." In the instant case, plaintiff's refusal to accept suitable work offered by her employer was not justified. Therefore, she is not entitled to additional benefits after July 9, 2003, the date on which defendants filed the Form 24 requesting termination of compensation, for as long as she continues to refuse the suitable work defendants have offered her. Id.
2. As a result of plaintiff's injury by accident, she is entitled to permanent partial disability compensation for nine weeks for her back and for 7.2 weeks for her left arm at the compensation rate of $366.28 per week. N.C. Gen. Stat. §§ 97-31(23) and 97-31(13).
3. Plaintiff is entitled to payment of all medical expenses incurred as a result of her injury on January 25, 200. N.C. Gen. Stat. §§ 97-2(19);97-25.
4. Defendants are entitled to a credit for any overpayment of temporary total disability compensation paid to the plaintiff after July 9, 2003. This credit shall be allowed to reduce the amount of permanent partial disability compensation due plaintiff. N.C. Gen. Stat. § 97-42.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants are authorized to suspend benefits to plaintiff, effective July 9, 2003, until plaintiff ceases to refuse employment procured for her that is suitable to her capacity. Defendants shall receive a credit for compensation paid plaintiff after July 9, 2003, which shall be applied to any future compensation due and payable to plaintiff.
2. If not already paid, defendants shall pay the plaintiff permanent partial disability compensation at the rate of $366.28 per week for nine weeks for her back and for 7.2 weeks for her left arm, subject to a credit to defendants for any overpayment of temporary total disability benefits paid to plaintiff after July 9, 2003.
3. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff for treatment of her left arm and back, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or lessen plaintiff's period of disability.
4. Defendants shall pay the costs, including the expert witness fee to Dr. Zuhosky in the amount of $285.00.
This the ____ day of _______ 200_.
 S/_________________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_____________________ CHRISTOPHER SCOTT COMMISSIONER